**Kuhn v. Kuhn**

*Hubert X. Gilroy*, Master.
*Richard C. Snelbaker*, for plaintiff.
*Samuel L. Andes*, for defendant.

SHUGHART, *P.J.*, October 26, 1982—The husband brought this divorce action on September 9, 1981. Both parties have consented to a divorce, but there is a dispute over the distribution of marital property, alimony, and counsel fees. For this reason a master's hearing was held on April 15-16, 1982. The wife's exceptions to the report of the master are now before us.

The first issue is whether the master properly classified all the parties' property as marital property, subject to distribution under the Divorce Code of April 2, 1980, P.L. 63, P.S. §§101-801 (pkt. part 1982-1983). The code clearly creates the presumption that all property acquired during the marriage is marital property: Id. §401(f). This presumption may be overcome, however, by showing that the property was acquired in one of the ways delineated in section 401(e). One such way is to show that the property was acquired by gift: Id. §401(e)(3). Whether the gift comes from a third party or from the other spouse is immaterial: Sorbello v. Sorbello, 21 D. & C. 3d 187 (1981).

The burden of showing that the property was acquired by gift is on the party claiming the exception under section 401(e): Fox v. Fox, 22 D. & C. 3d 1 (1982). The code is silent as to the quantum of proof necessary to rebut the presumption of marital property, but at least one court has held that the burden of overcoming the presumption is by "clear and convincing evidence." Id. at 7. We see no need

to reiterate the reasoning behind Judge Fornelli's decision in Fox. Suffice it to say that we find the reasoning persuasive and henceforth will apply the clear and convincing standard in cases before us.

Upon review of the record, we find that the wife met her burden of showing that certain items of personal property were gifts and therefore excluded from distribution under section 401. The master acknowledged that some of the personalty had been received by the wife as gifts, but he nevertheless classified those items as marital property because they "were later used as jointly owned marital property." M.R. 9. (Emphasis added.)[1] The master cited no authority, nor are we aware of any, for the proposition that property loses its gift status through joint use. The use to which the property is put may be a factor in determining the donor's intent—that is, whether the property was a gift in the first instance—but joint use does not by itself mean that the property is marital property under the code. Unless the donee has given away part or all of her interest in the property, the property acquired by gift remains as such and should be classified as nonmarital property under section 401(e).

The record clearly supports the wife's claim that the stereo valued at $40 was a Christmas gift from her husband and should not have been classified as marital property: 2 N.T. 20; 3 N.T. 88-89 & 96.[2] In addition, the antique table valued at $60 and the cane chair valued at $10 were gifts to the wife from her mother that should have been classified as nonmarital property: N.T. 16-18. The wife has not met her burden, however, of proving that the fol-

---

1. Page references are to the master's report filed June 17, 1982.

2. Page references are to the notes of testimony from the April 15-16, 1982, master's hearing.

lowing items were gifts to her alone: the oak table, the dishes, the plank chairs, the Rayo lamp, the hutch, the cedar chest, and the pictures.

In addition to the improperly classified gifts, we find that the master erred in distributing property that is owned by neither of the parties. Both the wife and the parties' daughter testified that the bedroom stand, oak chair, child's table, and vinyl chair are the daughter's: 2 N.T. 22 & 84. There is no contradictory testimony and no finding by the master, express or implied, that the witnesses' testimony was incredible. Accordingly, we find the above-listed items to be the property of neither party, removing them from consideration in the final distribution. Similarly, the maple chairs that belong to the son are not distributable: 2 N.T. 23. Lastly, the child's rocker should have been excluded either as property acquired before the marriage or as property acquired by gift: 23 P.S. §401(e)(1), (f).

Taking all the marital property into consideration, the total value of the distributable marital estate is approximately $136,962. The master recommended an equal division of the property, but the wife contends that he failed to consider all the relevant factors before reaching his decision.

A noninclusive list of factors to be considered when distributing marital property is found in section 401(d) of the Divorce Code: 23 P.S. §401(d). Although the master considered these factors, we find his conclusion unacceptable. Specifically, we find that three of the factors weigh heavily in the wife's favor and should have resulted in a more favorable award to her.

Section 401(d)(3) requires consideration of the "age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties." Id. §401(d)(3). In the same vein, the parties' "oppor-

tunity . . . for future acquisitions of capital assets and income" must be considered, id. §401(d)(5), as well as their "economic circumstances . . . at the time the division of property is to become effective," id. §401(d)(10). The master recognized that the husband's employability is greater than the wife's, which is quite limited, but went on to minimize this factor by pointing to the husband's intent to retire within the year, at age sixty-two: M.R. 9.

In our view the wife's position is far less secure than the husband's. The husband's intent to retire apparently reflects his personal desire only. There is no indication that this would be a forced retirement. Furthermore, the evidence fails to indicate any impediment to the husband's continued employment. His average gross income over the past three years has been approximately $23,254: 1 N.T. 16, 36-37. Although last year's income was less than $16,000, it is by no means clear whether this reduction was at least in part the result of the husband's request for a lighter workload or a forced reduction. See 1 N.T. 38 (loss of territory). At any rate, although 61 years of age, he is still employable with opportunity for future acquisition of assets and income; his economic circumstances are far from bleak.

On the other hand, the wife's prospects are indeed bleak. She was not employed outside the home from 1947 to 1980, and she has no special training or higher education: 1 N.T. 77. She is 60 years of age: 1 N.T. 72. Moreover, she has certain physical limitations. Arthritis prevents her from performing certain tasks, such as typing, and an artificial hip joint further limits her ability and endurance: 1 N.T. 89-90. Her weekly gross income from a part-time job has ranged from $21 to $85: 1 N.T. 79, 93. Considering the skills that she has to offer, her physical limitations, and the availability of work,

we find her employability to be quite low. See White v. White, 226 Pa. Super. 499, 505 n. 5, 313 A. 2d 776, 780 (1973); Sorbello v. Sorbello, supra. She has minimal opportunity for future acquisition of income and probably no opportunity for acquisition of assets. See 23 P.S. §401(d)(3), (5). In short, the "economic circumstances" of these parties are not equal, but are significantly more favorable to the husband: Id. §401(d)(10).

The other factors relevant to a distribution of property were adequately discussed by the master, and we see no reason to further discuss them here. Taking all of the factors into consideration, including the needs of each party (23 P.S. §401(d)(3) ), we conclude that a more equitable distribution of the property would be as follows:

The husband shall receive the garage items listed on page 2 of plaintiff's exhibit 8, the wood-working tools, the lumber, and snowmobile. Total value of these items is $2,670. In addition, he shall retain the annuity valued at $29,000, the two life insurance policies, and the IRA account. The total value of all this property is $37,939.

The wife shall receive the household goods and furnishings, the burial lots, and the automobile. Total value is $6,460. In addition, she shall receive the remaining liquid assets totaling $16,564.

The real estate, valued at $76,000, shall be promptly sold, with the proceeds to be distributed as follows: the greater of $50,000 or 65 percent of the new proceeds to the wife, the remainder to the husband. The master's recommendation that each party shall have the right to reside in the marital residence pending its sale, to which neither party has filed exceptions, is accepted. Taxes and insurance costs pending sale shall be borne by the parties on an equal basis, or by the sole occupant if one of the parties vacates the premises.

Under the distribution schedule set forth above, the marital estate ultimately will be distributed as follows: $63,939 to the husband, $73,024 to the wife. Distribution of the household goods and furnishings and the garage items used to maintain the marital residence shall be effective when the residence is sold, unless the parties agree to an earlier time.

Under this distribution the wife will have immediate access to approximately $16,000 in cash, plus continued access to the marital residence, which will keep her living expenses quite low. Nonetheless, she seeks alimony of $70 per week. The master declined her request. In discussing the wife's request the master wrote, "In light of the funds the [wife] will have, it is apparent that [she] will be able to provide for her reasonable needs." M.R. 13. With due respect, it is not so apparent to us.

As we previously noted, the wife is probably unable to support herself through employment. See 23 P.S. §501(a)(2). The $16,000, plus the personalty received pursuant to this award, does not, in our opinion, constitute "sufficient property" from which her reasonable needs can be met: Id. §501(a)(1). She cannot be expected to dissipate all her assets, knowing that here is no future source of income available. Instead, she must basically rely on the income from these assets. The income from this relatively small cash reserve, in today's market, cannot support anyone. And of course once the house is sold, much of the increase in income from the increased cash assets will be offset by increased housing costs. Thus, we do not see the sale of the house having a significant effect on her spendable income after housing costs are deducted, especially in light of the inflationary trend of recent years.

In short, we find that the wife qualifies for

alimony under section 501 of the Divorce Code. Furthermore, after consideration of the factors enunciated in section 501(b), we find that $50 per week is appropriate. Since such payments are tax deductible, the annual cost to the husband would be less than $2,600. This amount, in addition to the wife's earned income and interest income, should provide for her reasonable needs, while at the same time allowing her to preserve some assets in the event she survives her husband.

Regarding the wife's request for counsel fees above the $250 awarded in Judge Hoffer's earlier order, we accept the master's recommendation that such request be denied. Counsel fees can be awarded "to ensure that a financially dependent spouse will be able to maintain, or defend against, a divorce action." Jack v. Jack, 253 Pa. Super. 538, 543, 385 A. 2d 469, 472 (1978) (construing the Divorce Law. Act of May 2, 1929, P.L. 1237 §46 as amended by the Act of June 27, 1974, P.L. 403, 23 P.S. §46 (repealed) ).

[M]erely because one spouse earns more than the other does not automatically entitle the spouse earning less money to counsel fees. Actual need must be shown in order to justify an award of counsel fees so that both parties are placed 'on a par' in defending their rights. In many cases where both spouses are earning or have access to substantial amounts of money no award of counsel fees should be made to either spouse.

Hoover v. Hoover, 288 Pa. Super. 159, 161-62, 431 A. 2d 337, 338 (1981). Since the wife will receive significant assets pursuant to the distribution of marital property, we agree with the master that additional counsel fees are not justified.

## ORDER OF COURT

And now, October 26, 1982, the master's report filed in this matter is hereby adopted insofar as consistent with the opinion filed this date. For the reasons appearing in the report and opinion, it is ordered that Joseph P. Kuhn is divorced from Edith E. Kuhn.

It is further ordered that alimony be granted to Edith Kuhn in the amount set forth in a separate order filed this date.

It is further ordered that Edith Kuhn's request for further counsel fees be denied, but that the costs of this action be borne by Joseph Kuhn.

It is further ordered that the marital property be distributed as follows:

1. The real estate owned by the parties at 360 North Middlesex Road, Carlisle, shall be promptly sold, with the greater of $50,000 or 65 percent of the net proceeds going to Edith Kuhn, the remainder to Joseph Kuhn. Pending sale, each party retains a right to possession and shall share taxes and insurance costs equally, this obligation conditioned upon residency.

2. Joseph Kuhn shall receive the garage items listed on page 2 of his exhibit 8, the woodworkng tools, the lumber, and the snowmobile, with distribution of items necessary for maintenance of the marital residence to await sale of the residence. In addition, he shall receive the annuity, the two life insurance policies, and the IRA account.

3. Edith Kuhn shall receive the household goods and furnishings (the distribution of which shall await sale of the marital residence), the burial lots, and the automobile. In addition, she shall receive all remaining liquid asset accounts.